UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
DEC 22 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-487-GWU

ETHEL HAMILTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hamilton

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ethel Hamilton, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning, a personality disorder, and dysthymia. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 30 years, ninth grade education, and lack of work experience, could perform any jobs if she had no exertional limitations, but would be limited to work requiring no greater than a fourth-grade reading level, and would have a "moderately limited" ability to handle detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without unreasonable number and length of rest periods, to interact appropriately with the general public, to accept

7

instructions from and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (Tr. 287). The VE responded that there were jobs that such a person could perform, and proceeded to give examples at the medium and light levels along with the numbers in which they existed in the regional and national economies. (Tr. 288).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff had filed a prior application for SSI in October, 1999, alleging disability since birth (Tr. 48), but this application was denied at the initial level on April 17, 2000 and not further pursued (Tr. 13). The ALJ in the present application, which had been filed August 27, 2001 (Tr. 52), declined to reopen the prior application, although he did consider some evidence submitted in connection with the first application "historically" (Tr. 13, 15). The plaintiff alleged disability due to heart trouble and depression in both applications, but in the current application added allegations of anxiety, bleeding from the ears, and severe back pain. (Tr. 62, 95).

The ALJ adopted the specific mental restrictions given by a state agency psychological reviewer. (Tr. 195-7). Other mental evidence includes a mental status evaluation by Dr. C. Vora, a psychiatrist, which produced an impression of mild dysthymia, major depression without psychotic features in remission, and dependent

8

personality disorder traits. (Tr. 188). Dr. Vora assessed a Global Assessment of Functioning (GAF) score of 60-65, both currently and for the past year. (Id.). A GAF score in this range reflects no more than moderate impairment per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Vora also opined that the plaintiff would have a "fair" ability to relate to others, handle instructions, sustain attention to perform simple, repetitive tasks, relate to others, and tolerate the stress and pressures of day-to-day work activity.[1] Finally, treatment notes from the Cumberland River Comprehensive Care Center show that the staff psychiatrist was treating the plaintiff with either Zoloft or Prozac, depending on which samples were available (Tr. 235), and in September, 2001 gave the plaintiff's diagnoses as a dysthymic disorder and a borderline personality disorder with a current GAF of 60. (Tr. 245, 248). Although a psychological evaluation conducted in connection with the plaintiff's prior application for benefits suggested greater limitations (Tr. 155-60), and the ALJ adopted the fourth-grade reading level established at this evaluation, the ALJ could have reasonably accepted the more recent opinions, which were consistent with the hypothetical question.

A consultative physical examination by Dr. Mark Carter in February, 2000, also in connection with the prior application, reflected the plaintiff's complaints of constant chest pain, which had been going on "as long she could remember," with

---

[1]The term "fair" was not defined. (Tr. 189).

9

increased heart rate, shortness of breath, and chest pain whenever she ate or became active. (Tr. 161). Dr. Carter's examination showed that the plaintiff was overweight, in no distress, had clear lungs, normal heart sounds, and, despite some spinal tenderness, she was able to bend forward 80 degrees at the waist and get up and down from the examination table without apparent difficulty. (Tr. 162). An electrocardiogram showed a normal rhythm with a rate of approximately 70, and thoracic spine x-rays were normal. (Tr. 163). Dr. Carter's impression was of atypical chest pain, "doubtful cardiac, by history" and thoracic back pain with no evidence of radiculopathy or impaired range of motion. (Id.). A state agency physician who reviewed the record at this point concluded that she did not have a "severe" mental impairment. (Tr. 165).

In connection with the current application, the plaintiff submitted brief office notes from Dr. Raymond Hayden, which indicated that he had treated the plaintiff for an ear problem in 2000 and referred her to a specialist for the condition, but the appointment was not kept. (Tr. 183-5). He had no up-to-date information on her condition.

Otherwise, evidence regarding the plaintiff's physical problems is confined to a consultative examination by Dr. Christopher Feddock in December, 2001. The plaintiff listed her problems as (1) a rapid heart rate since childhood, which became worse with excitement and caffeine, (2) an enlarged heart which had been diagnosed by a back specialist, although a follow up with a cardiologist, including an

10

echocardiogram, was reported to be normal, (3) back pain, and (4) depression. (Tr. 190). In addition to ingesting caffeine, the plaintiff reported smoking up to two packs of cigarettes a day. (Tr. 191). Dr. Feddock's examination showed that the plaintiff was overweight, in no apparent distress, with a pulse of 98, a clear chest, normal heart sounds, and no physical evidence of congestive heart failure. (Tr. 192). There were no neurological abnormalities, she had a normal range of motion, no impairment in toe and heel walking, and no difficulty getting on and off the examination table. (Tr. 193). In his discussion of the plaintiff's rapid heart rate, Dr. Feddock noted that the plaintiff was describing symptoms most consistent with supraventricular tachycardia (SVT), which would require a Holter Monitor to evaluate. (Id.). He stated that the plaintiff should not engage in "rigorous activity until this heart rhythm abnormality is known." (Id.). He felt that her complaint of enlarged heart seemed to be a misdiagnosis based on a back x-ray, and with a normal echocardiogram this problem should not interfere with her ability to perform her usual activities. (Id.). Her complaint of back pain was most consistent with osteoarthritis, but there was no evidence of interference with usual activities in this case, either. He concluded that there was "no physical evidence for significant restriction in patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or ability to travel." (Id.).

The plaintiff argues on appeal that she was not represented by an attorney at the administrative level, and the ALJ did not properly develop the record regarding

11

Hamilton

Dr. Feddock's prohibition of "rigorous activity" due to her SVT symptoms. The plaintiff cites two cases involving totally unrepresented individuals, however. The plaintiff was represented at the administrative level by a non-attorney, and, as the Commissioner points out, such representation was authorized in the Social Security Act. 42 U.S.C. Section 406(a). While the Sixth Circuit has held that an ALJ has a heightened level of care and duty to develop the record in dealing with an unrepresented claimant with a mental impairment, Lashley v. Secretary of Health and Human Services, 708 F.2d 1048 (6th Cir. 1983), this heightened duty has not been extended by the Court to claimants who are represented by non-attorneys.

Moreover, while Dr. Feddock did indicate that a Holter Monitor would be required to evaluate the complaints that he felt were consistent with SVT, the Commissioner is not required to disprove every allegation of impairment made in the course of a disability application. There had already been two physical examinations, and Dr. Carter's had included an electrocardiogram which showed no abnormalities. The patient herself reported to Dr. Feddock, although no records were submitted, that a cardiac workup, including an echocardiogram, had been normal. Neither physical examination indicated any abnormalities in the plaintiff's heart sounds. Accordingly, this Court can find no basis for remand based on insufficient development of the record.

The plaintiff also criticizes the ALJ for selectively citing Dr. Feddock's report. However, it is correct that Dr. Feddock concluded his report by stating that there was

12

no physical evidence for restrictions. Even if this conclusion were to be disregarded, the physician's statement that the plaintiff should not engage in "rigorous" activity until the SVT symptoms (which were not present during his examination) were evaluated is not facially inconsistent with the light level, or even medium level, jobs identified by the VE. Consequently, a remand on this point would serve little purpose.

The decision will be affirmed.

This the 22 day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE